IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| JAMELL ALLEN MURPHY, R71059, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| vs. | ) |
| | ) Case No. 24-cv-1893-DWD |
| DOCTOR BABICH, | ) |
| NURSE CHILDRESS, | ) |
| SARGENT LAMB, | ) |
| SARGENT GOODCHILD, | ) |
| MISS CUNNINGHAM, | ) |
| MISS ULREY, | ) |
| | ) |
| Defendants. | ) |

# MEMORANDUM AND ORDER

**DUGAN, District Judge:**

Plaintiff Jamell Allen Murphy, an inmate of the Illinois Department of Corrections (IDOC), brings this civil rights action pursuant to 42 U.S.C. § 1983 for alleged deprivations of his constitutional rights at Lawrence Correctional Center (Lawrence). (Doc. 1). Plaintiff has also filed a related Motion for a Preliminary Injunction (Doc. 2). In the Complaint and Motion, Plaintiff alleges that in mid-January 2024 he tore the meniscus in his right knee, but since that time has been unable to secure needed medical care.

Under Section 1915A, the Court is required to screen prisoner complaints to filter out non-meritorious claims. *See* 28 U.S.C. § 1915A(a)-(b). Any portion of a complaint that is legally frivolous, malicious, fails to state a claim upon which relief may be granted, or asks for money damages from a defendant who by law is immune from such relief must be dismissed. 28 U.S.C. § 1915A(b). At this juncture, the factual allegations of the *pro se*

complaint are to be liberally construed. *Rodriguez v. Plymouth Ambulance Serv.*, 577 F.3d 816, 821 (7th Cir. 2009).

## The Complaint

In January of 2024, Plaintiff became lightheaded due to unrelated medical issues, and he lost consciousness in his cell. When he passed out, Plaintiff fell, striking his head on his bunk. He was transported to the medical unit and then to the hospital, where he received stitches for a wound on his head. His right knee was also x-rayed. Plaintiff was then returned to the prison.

Shortly after his return to the prison, Plaintiff alleges his right knee began to shift and pop, causing extreme pain. He alleges that his knee sometimes gave out while walking. He was seen on sick call by Defendant John Doe nurse, but this individual said there was nothing he could do about the issue. (Doc. 1 at 3). While housed in the prison infirmary, Plaintiff asked non-party LPN Luking about his right knee pain. She ordered additional x-rays and physical therapy, but neither thing addressed the pain.

On February 11, 2024, Plaintiff asked a nurse to be seen by Dr. Babich, and that afternoon Babich examined his knee. Dr Babich performed a limited examination and concluded he did not believe Plaintiff's meniscus was torn. He instead suggested Plaintiff had "stretchy tendons." Dr. Babich said he would order more pain medication and he would order additional physical therapy, but Plaintiff claims Babich never followed through on these things.

Plaintiff was eventually moved out of the prison infirmary. (Doc. 1 at 5). He continued to experience knee problems, so he placed another sick call slip. A John Doe

defendant saw him on sick call line and indicated nothing could be done.  Eventually, Plaintiff saw non-party Luking again and she indicated she had already submitted him for an outside screening.  On March 1, 2024, a referral was made, and on May 24, 2024, Plaintiff had an MRI.  (Doc. 1 at 5).  The MRI results revealed a bucket tear of the right knee meniscus.

Plaintiff alleges that on an unspecified date, he told Defendants Lamb and Goodchild (sergeants on two shifts) that he was still in extreme pain and had a limited range of motion.  (Doc. 1 at 5).  He alleges they refused to get him the needed medical assistance and contributed to the delay in the care he received (Doc. 1 at 7).

Plaintiff alleges that on May 24, 2024, his emergency grievance about his knee was reviewed by Defendants Ulrey and Cunningham (the Director of Nurses and Healthcare Unit Administrator).  (Doc. 1 at 6).  He faults them for failing to address the delayed medical care, despite being responsible for medical referrals.  (Doc. 1 at 7).

Plaintiff seeks declaratory, monetary and injunctive relief.  In support of his complaint, he submitted grievance documentation.  His initial emergency grievance was deemed an emergency by the Warden on May 22, 2024.  (Doc. 1 at 15).  The grievance officer indicated in review that, per the healthcare unit administrator, Plaintiff's MRI results showed a bucket-tear, and he had been referred for an orthopedic consultation on June 4, 2024.  (Doc. 1 at 15).  The consultation was pending.  The grievance officer also indicated that Plaintiff had been seen multiple times in June of 2024 at nurse sick call about his knee.  As such, the grievance officer recommended that the grievance be denied because care was ongoing.  The documentation also suggests Plaintiff submitted a second

emergency grievance on or around June 11, 2024, (Doc. 1 at 17), but that it was denied emergency status and was sent for counselor's processing on June 17, 2024 (Doc. 1 at 18). There is no indication about the outcome of this grievance, or who processed it.

Based on the allegations in the Complaint, the Court designates the following counts:

> **Claim 1:** **Eighth Amendment deliberate indifference claim against Dr. Babich for failing to adequately diagnose or treat Plaintiff's knee on February 11, 2024;**
>
> **Claim 2:** **Eighth Amendment deliberate indifference claim against Defendants Lamb and Goodchild for refusing Plaintiff medical assistance or delaying his access to care;**
>
> **Claim 3:** **Eighth Amendment deliberate indifference claim against Defendants Ulrey and Cunningham for failing to ensure timely care in response to Plaintiff's grievance.**

The parties and the Court will use these designations in all future pleadings and orders unless otherwise directed by a judicial officer of this Court. Any claim that is mentioned in the Complaint but not addressed in this Order is considered dismissed without prejudice as inadequately pled under *Twombly*. See *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007) (an action fails to state a claim upon which relief can be granted if it does not plead "enough facts to state a claim that is plausible on its face").

## Preliminary Dismissal

Plaintiff named Nurse Childress as a defendant in the caption of the case, but there are no factual allegations against Childress in the text, other than a blanket assertion in the legal claims section that he acted with deliberate indifference. It seems likely that in the body-text, Plaintiff referred to Childress as the "John Doe" defendant, because he

described Childress as a sick-call nurse (Doc. 1 at 2) and described interactions with the John Doe as occurring at sick call (Doc. 1 at 3, 5). However, the Court will not draw assumptions about a Doe defendant of this nature. Defendant Childress will be dismissed without prejudice because naming him in the caption is not enough to state a valid claim. *See e.g.*, *Black v. Lane*, 22 F.3d 1395, 1401 n. 8 (7th Cir. 1994) (naming a defendant in the caption, but not describing their role in the factual allegations is insufficient). Plaintiff is free to re-plead a claim against Childress in greater detail.

## Analysis

To state a claim for deliberate indifference to a serious medical need, an inmate must show that (1) he suffered from an objectively serious medical condition; and (2) the defendant was deliberately indifferent to a risk of serious harm from that condition. *Rasho v. Elyea*, 856 F.3d 469, 475-76 (7th Cir. 2017). "Every claim by a prisoner that he has not received adequate medical treatment is not a violation of the Eighth Amendment." *Petties v. Carter*, 836 F.3d 722, 727 (7th Cir. 2016). To determine if a medical professional acted with deliberate indifference, courts look to the provider's subjective state of mind. *Id.* at 728. An inmate need not show that a doctor explicitly intended harm or believed it would occur, but he must show more than negligence, medical malpractice, or even objective recklessness. *Id.*

Plaintiff's allegations against Dr. Babich present a close call even at this early juncture. He alleges he was seen by Dr. Babich the same day he requested a visit and that Babich performed basic range-of-motion exercises and concluded he did not think Plaintiff had a torn meniscus. Babich then suggested pain medication and more physical

therapy. If pain medication and physical therapy had followed, it would seem that at most an argument could be made that Babich's actions might be considered negligence under some generally accepted standard of care. However, here Plaintiff alleges that Babich entirely failed to follow-up on the medicine and physical therapy, he delayed his care, and he left him to suffer needlessly in pain. Reading the complaint broadly in Plaintiff's favor, this could be enough to support a claim for deliberate indifference, so Plaintiff may proceed against Babich.

By contrast, the Court finds that Plaintiff's allegations against Defendants Lamb and Goodchild are too generic to proceed. Plaintiff described Lamb and Goodchild as guards who worked in his cellhouse. He claims he informed them during their shifts that he was in serious pain and wanted care, but he does not indicate when he did this, how many times he did it, what they knew or could discern about his physical state or how they individually responded. In general, a plaintiff satisfies the objective component of the deliberate indifference inquiry with evidence that a physician has diagnosed a medical condition as requiring treatment, "or the need for treatment would be obvious to a layperson." *Lockett v. Bonson*, 937 F.3d 1016, 1022–23 (7th Cir. 2019) (quotations and citations omitted). "A condition can be 'obvious' to a layperson even where he or she is unable to diagnose or properly identify the cause of an observed ailment." *Orlowski v. Milwaukee Cnty.*, 872 F.3d 417, 423 (7th Cir. 2017).

Here, Plaintiff does not have any factual allegations that suggest Lamb and Goodchild, as laypersons, were aware of a serious risk to his health and intentionally decided not to render aid. At most, it seems he may have informed them on a single

occasion that he desired medical care, without any indication they observed him in pain or knew about the possible seriousness or duration of his injury.  Claim 2 is dismissed without prejudice as insufficient due to the lack of detail about Goodchild and Lamb's involvement and knowledge of the situation.

Finally, Plaintiff faults Defendants Cunningham and Ulrey for contributing to a delay in care based on their handling of his emergency grievance, but the documents submitted in support of his claim do not give rise to a claim against these two.  An inmate cannot make out a deliberate indifference claim solely premised on the processing or mishandling of a grievance.  *Owens v. Hinsley*, 635 F.3d 950 (7th Cir. 2011).  Claims can sometimes be made against officials for their investigation into a grievance or their failure to exercise their authority to remedy a situation, but the grievance documentation in this case does not sustain a plausible claim of this nature.  *See e.g., Perez v. Fenoglio*, 792 F.3d 768, 782 (7th Cir. 2015).  Instead, the grievance documents suggest that when queried about Plaintiff's need for care the Healthcare Unit Administrator (Cunningham) indicated that Plaintiff had recently undergone an MRI, had a pending referral for an orthopedic visit, and had been seen at least three times at sick call.  These findings indicate that Cunningham investigated the situation and found that multiple modalities of care were already in action.  Against this backdrop, it does not appear that Cunningham's handling of the grievance itself was erroneous in any way.

Plaintiff may be faulting Cunningham or Ulrey for subsequent delays in the scheduling of care *after* the grievance, but his complaint does not give any details about what has happened since the orthopedic referral was made, so it is unclear what role they

might have played.  On the face of the complaint and supporting exhibits, Plaintiff's allegations against Cunningham and Ulrey are insufficient to support a deliberate indifference claim for delaying care, so Claim 3 will be dismissed without prejudice.

## Motion for a Preliminary Injunction

In the Motion for a Preliminary Injunction (Doc. 2) Plaintiff seeks immediate action from Dr. Babich, and from non-party LPN Luking.  Specifically, he is asking that these two individuals be directed to schedule him for surgery to repair the tear in his meniscus.  He explains that his injury has become more painful over time, and he has now been forced to wait over six months for needed care.  He claims there is a delay because the prison refuses to pay medical bills for outside facilities, although there are no correlating allegations in the complaint that suggest this is a problem.  Plaintiff complains that he currently suffers extreme pain, a loss of sleep, a limited range of motion, and overall joint weakness.  He also wants a directive that he be given physical therapy after surgery is completed.

To seek a preliminary injunction, a plaintiff must establish: a likelihood of success on the merits of his claim; no adequate remedy at law; and irreparable harm without the injunctive relief.  *See Mays v. Dart*, 974 F.3d 810, 818 (7th Cir. 2020).  An injunction that seeks an affirmative act by the respondent is a mandatory preliminary injunction and should be sparingly issued.  *Mays*, 974 F.3d at 818.  If injunctive relief is warranted, the Prison Litigation Reform Act provides that the injunction must be "narrowly drawn, extend no further than necessary to correct the harm . . . ," and "be the least intrusive means necessary to correct that harm."  18 U.S.C. § 3626(a)(2).  Any injunctive relief

granted must also be related to claims proceeding in the underlying lawsuit, and it must generally concern parties associated with those claims.

For purposes of initial review, the Court finds that Plaintiff's claims on the face have some likelihood of success on the merits, and also that he seeks injunctive relief related to the issues presented in this lawsuit. However, the grievance documentation supporting the complaint (Doc. 1 at 14) suggested that Plaintiff was actively receiving care for his knee injury and that he had an active referral for an orthopedic consultation. Given that Plaintiff's own evidence suggests he has ongoing care, the Court will not intervene to direct a different course of care. There is no reason to believe on the evidence and allegations presented that the prison's current course of care is insufficient, or that emergency relief is needed to preserve the status quo during this litigation. Accordingly, Plaintiff's Motion (Doc. 2) is DENIED without prejudice, but may be refiled with supplemental information about his current status.

## Disposition

**IT IS HEREBY ORDERED THAT Claim 1** of the Complaint (Doc. 1) survives initial screening as described above against Dr. Babich. The Clerk of Court is **DIRECTED** to also **ADD** the Warden of Lawrence in official capacity, because Plaintiff seeks injunctive relief, and the Warden would be the proper party to implement any such relief.

Claims 2 and 3 are insufficient to state a claim, and Plaintiff has failed to state a valid claim against Defendants Childress, Goodchild, Lamb, Cunningham and Ulrey. The Clerk of Court is **DIRECTED** to **TERMINATE** Childress, Goodchild, Lamb, Cunningham and Ulrey.

The Clerk of Court is **DIRECTED** to prepare for Defendants Dr. Babich, and Warden of Lawrence (official capacity only): (1) Form 5 (Notice of a Lawsuit and Request to Waive Service of a Summons), and (2) Form 6 (Waiver of Service of Summons). The Clerk is **DIRECTED** to mail these forms, a copy of the Complaint (Doc. 1), and this Memorandum and Order to Defendants' place of employment as identified by Plaintiff. If Defendant fails to sign and return the Waiver of Service of Summons (Form 6) to the Clerk within 30 days from the date the forms were sent, the Clerk shall take appropriate steps to effect formal service on Defendant, and the Court will require Defendant to pay the full costs of formal service, to the extent authorized by the Federal Rules of Civil Procedure.

If a Defendant cannot be found at the work address provided by Plaintiff, the employer shall furnish the Clerk with the Defendant's current work address, or, if not known, the Defendant's last-known address. This information shall be used only for sending the forms as directed above or for formally effecting service. Any documentation of the address shall be retained only by the Clerk. Address information shall not be maintained in the court file or disclosed by the Clerk.

Defendants are **ORDERED** to timely file an appropriate responsive pleading to the Complaint and shall not waive filing a reply pursuant to 42 U.S.C. § 1997e(g). **Pursuant to Administrative Order No. 244, Defendants need only respond to the issues stated in this Merits Review Order.** However, the Warden need not file an answer because he or she has been added solely because Plaintiff seeks eventual injunctive relief.

If judgment is rendered against Plaintiff, and the judgment includes the payment of costs under Section 1915, Plaintiff will be required to pay the full amount of the costs, regardless of whether his application to proceed *in forma pauperis* was granted. *See* 28 U.S.C. § 1915(f)(2)(A).

Plaintiff is **ADVISED** that he is under a continuing obligation to inform the Clerk of Court and each opposing party of any address changes; the Court will not independently investigate his whereabouts. This shall be done in writing and not later than 7 days after a transfer or other change of address occurs. Failure to comply with this order will cause a delay in the transmission of court documents and may result in dismissal of this action for failure to prosecute. Fed. R. Civ. P. 41(b).

Based on the allegations in the Complaint, the Clerk of Court is **DIRECTED** to enter the standard qualified protective order pursuant to the Health Insurance Portability and Accountability Act.

As explained above, Plaintiff's Motion for a Preliminary Injunction (Doc. 2) is **DENIED without prejudice**.

**IT IS SO ORDERED.**

Dated: August 22, 2024

_____
DAVID W. DUGAN
United States District Judge

## Notice to Plaintiff

The Court will take the necessary steps to notify the appropriate defendants of your lawsuit and serve them with a copy of your complaint. After service has been achieved, the defendants will enter their appearance and file an Answer to the complaint. It will likely take at least 60 days from the date of this Order to receive the defendants' Answers, but it is entirely possible that it will take 90 days or more. When all of the defendants have filed Answers, the Court will enter a Scheduling Order containing important information on deadlines, discovery, and procedures. Plaintiff is advised to wait until counsel has appeared for the defendants before filing any motions, to give the defendants notice and an opportunity to respond to those motions. Motions filed before defendants' counsel has filed an appearance will generally be denied as premature. Plaintiff need not submit any evidence to the Court at his time, unless otherwise directed by the Court.

The Court wishes to remind the Plaintiff that litigation is often viewed a series of hurdles that the Plaintiff must clear to get to another hurdle. Initial screening is such a hurdle, but it is a very low one for the Plaintiff to clear.  As noted above, surviving initial screening only requires the bare statement of a claim that, if proven, could entitle Plaintiff to some relief. At trial, he will need to prove by a preponderance of evidence that the facts alleged actually occurred and that those facts satisfy the legal requirements for recovery. Trial is the highest and most difficult of hurdles for any Plaintiff to clear.